1  BRETT J. SCHREIBER, ESQ. (SBN 239707)
2  THORSNES BARTOLOTTA McGUIRE LLP
   2550 Fifth Avenue, 11th Floor
3  San Diego, California  92103
   Tel: (619) 236-9363 Fax: (619) 236-9653

4  Attorney for Plaintiffs IVY SILBERSTEIN and
   SILBERSTEIN & SILBERSTEIN, LLC.

5

6

7

8          SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                    COUNTY OF LOS ANGELES

10  IVY SILBERSTEIN and SILBERSTEIN &      | Case No.:
    SILBERSTEIN, LLC,                      |               BC 5 9 4 8 0 1
11                                         |
              Plaintiffs,                  | COMPLAINT FOR DAMAGES:
12                                         |
          v.                               | (1) Trademark Infringement under 15
13                                         |     U.S.C. § 1114;
    FOX ENTERTAINMENT GROUP, INC.;         | (2) Contributory Trademark
14  TWENTIETH CENTURY FOX FILM             |     Infringement in Violation of 15
    CORPORATION; BLUE SKY STUDIOS;         |     U.S.C. § 1114;
15  and DOE DEFENDANTS 1–10,               | (3) Vicarious Trademark Infringement
    Inclusive,                             |     in Violation of 15 U.S.C. § 1114;
16                                         |     and
                                           | (4) Unfair Competition under Cal.
17            Defendants.                  |     Bus. & Prof. Code, §17200.
18                                         |
                                           | JURY TRIAL DEMANDED
19

20        Plaintiff Ivy Silberstein and Silberstein & Silberstein LLC (collectively

21  "Plaintiffs"), bring this action against Defendants Twentieth Century Fox Film

22  Corporation, Blue Sky Studios, Fox Entertainment Group, Inc.,  and Doe

23  Defendants 1–10 (collectively referred to as "Defendants"). Plaintiffs are

24  informed, believe, and based thereon allege as follows:

25  / / /

26  / / /

27  / / /

28
                                           1
1112584v1  | COMPLAINT

THORSNES BARTOLOTTA McGUIRE LLP
2550 Fifth Avenue, 11th Floor
San Diego, California 92103
(619) 236-9363
FAX (619) 236-9653

## THE PARTIES

1.      Plaintiff Ivy Silberstein is an individual and resident of the state of New York. Ms. Silberstein owns the trademarks for "Sqrat" and the limited liability company, Silberstein & Silberstein, LLC. Ms. Silberstein granted a sole license to use the "Sqrat" trademarks to Silberstein & Silberstein, LLC.

2.      Plaintiff Silberstein & Silberstein LLC is a limited liability company registered to do business in the State of New York, with its principal place of business located at 1 Irving Place, New York, New York 10003. Silberstein & Silberstein, LLC owns a sole license to use the trademarks for "Sqrat."

3.      On information and belief, Defendant Fox Entertainment Group, Inc. ("Fox Entertainment") is a corporation organized under the laws of the State of Delaware, with a principal place of business in the State of California, located at 10201 West Pico Blvd., Los Angeles, CA 90035.

4.      On information and belief, Defendant Twentieth Century Fox Film Corporation ("20th Century Fox") is a subsidiary of Defendant Fox Entertainment, and is a corporation organized under the laws of the State of Delaware, with a principal place of business in the State of California, located at 10201 West Pico Blvd., Los Angeles, CA 90035.

5.      On information and belief, Defendant Blue Sky Studios ("Blue Sky") is a subsidiary of Defendant 20th Century Fox, and is a corporation organized under the laws of the State of Delaware, with a principal place of business in the State of Connecticut, located at 1 American Lane, Greenwich, CT, 06831.

6.      Plaintiffs are presently unaware of the true names of the Defendants identified in the Complaint under the fictitious names Does 1–10. On information and belief, Does 1–10, without Plaintiffs' authorization,

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

2

1112584v1    COMPLAINT

unlawfully and unfairly used, or contributed to the unlawful and unfair use, of confusingly similar variations of Plaintiffs' SQRAT® trademark in connection with Defendants' animated film *Ice Age*, and its sequel films and television shows, cartoon shorts, including related licensing, and merchandising of goods, services, and promotional items.

## JURISDICTION AND VENUE

7.     This action arises under the federal trademark statute, the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and under California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*

8.     Original jurisdiction over the subject matter of Plaintiffs' claim arising under California's Unfair Competition law has not been vested with any other California state court, and therefore this Court has jurisdiction over that claim under article VI, section 10, of the California Constitution.

9.     Further, this Court has subject matter jurisdiction over Plaintiffs' federal trademark infringement claims arising under the Lanham Act. (See 28 U.S.C. § 1338(a) [trademark claims are not within exclusive jurisdiction of federal district courts]; *Duggan's Funeral Serv., Inc. v. Duggan's Serra Mortuary, Inc.* (2000) 80 Cal.App.4th 151, 157 [federal and state courts have concurrent jurisdiction over cases arising under the Lanham Act]; *Scientific Technology, Inc. v. Stanford Telecommunications, Inc.* (N.D.Cal. Sept. 21, 1988, C-87-20768 WAI) 1998 WL 1091939, at *1 [9 U.S.P.Q.2d (BNA) 1566, 1567] ["Congress did not intend to limit adjudication of trademark actions under the Lanham Act to federal courts."]; 5 J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition* (4th ed.1997) § 32:1 ["[T]here is no doubt that violations of the Lanham Act can properly be brought in the state courts and that state courts possess powers under the Act identical to those of the federal courts."].)

///

THORSNES BARTOLOTTA McGUIRE LLP
2550 Fifth Avenue, 11th Floor
San Diego, California 92103
(619) 236-9363
FAX (619) 236-9653

3

COMPLAINT

10. Defendants conduct professional and commercial activities within this state on a substantial, continuous, and systematic basis sufficient to subject Defendants to the general personal jurisdiction of the courts of the State of California.

11. While Defendants are subject to the general personal jurisdiction of the courts of the State of California as set forth in the preceding paragraphs, the claims asserted in this complaint arise out of Defendants' commercial activities within the state of California, and therefore Defendants are also subject to the specific personal jurisdiction of the courts of the State of California for purposes of this lawsuit.

12. The damages sought by Plaintiffs are well in excess of this Court's jurisdictional threshold of $25,000.

13. The claims asserted in this Complaint arise out of acts, transactions, and conduct that occurred within the County of Los Angeles, and therefore this action is properly venued in the Superior Court for the County of Los Angeles.

## FACTUAL ALLEGATIONS

14. In or around May of 1999, Ivy Silberstein ("Ms. Silberstein") was inspired by the sight of an animal in a New York City park, and created an animated character that combined the likeness of a squirrel and a rat, which she named Sqrat. Ms. Silberstein quickly realized the potential of the concept, name and character and immediately set out to develop, market, brand, sell, and license the likeness of her created animated character.

15. During May 1999 to approximately 2003, Ms. Silberstein pitched her character to hundreds of her contacts in the film, television, animation and radio industries, including notable executives, such as: Michael Anderson, Michael Madnick, Joel Andreck, Elie Deckel, and Shuki Levy, all former

THORSNES BARTOLOTTA MCGUIRE LLP
2550 Fifth Avenue, 11th Floor
San Diego, California 92103
(619) 236-9363
FAX (619) 236-9653

4

COMPLAINT

executives at Saban Entertainment and Fox Family; executives at HBO; and numerous film directors, cartoonists, talent agents, film and television producers, media executives, authors, licensing executives, toy creators, celebrities, and attorneys in the entertainment industry.

16.   In June 1999, Ms. Silberstein marketed and pitched Sqrat at a licensing convention while attending as a guest of executives of Saban Entertainment and Fox Family Entertainment (then-existing subsidiaries of Fox Entertainment Group).

17.   Ms. Silberstein quickly grew the strength of the Sqrat mark in the market. In September - October 1999, the Sqrat trademark was nationally published, featured, and advertised in Licensing Magazine for licensing for an animated series, merchandising, and interactive games. The same month Ms. Silberstein purchased several websites containing the name Sqrat for the purpose of branding, marketing, and licensing Sqrat (and selling Sqrat related goods) on the internet. During this time, Ms. Silberstein immediately seized on this success in Licensing Magazine and contacted founder Haim Saban, founder of Saban Entertainment and Fox Family, via voicemail regarding development of an animated series or films based on her Sqrat character.

18.   The Sqrat mark continued to strengthen in the consumer market through publication in the New York press in news articles and interviews. Her efforts created a tremendous buzz about the Sqrat character that the Sqrat mark became associated exclusively with Plaintiff Ivy Silberstein as the source and origin of the Sqrat mark among consumers in the United States.

19.   For example, in February 2000, CNN interviewed Ms. Silberstein and aired a segment titled, "Move over Mickey, Here Comes the Sqrat!" This segment became the video of the day and video of the week on February 29, 2000, and was broadcasted approximately 146 times on local news channels in

THORSNES BARTOLOTTA MCGUIRE LLP
2550 Fifth Avenue, 11th Floor
San Diego, California 92103
(619) 236-9363
FAX (619) 236-9653

5

the United States, including local news stations owned by a Fox affiliated corporation. The nationwide coverage continued as the video was subsequently aired by Continental Airlines during in-flight programming on all flights, and aired on loop on television screens in 41 airports.

20.   In January 2000, the International Film and Video Festival selected Ms. Silberstein as an official entrant into its festival at Madison Square Garden. She marketed and pitched Sqrat, and distributed hundreds of press kits and copies of the Sqrat feature in Licensing Magazine to attendees at the festival in February 2000.

21.   Between May 1999 to 2006, Ms. Silberstein showcased and introduced Sqrat on numerous television and radio segments, and in multiple publications and print media, including but not limited to: CNN; Fox 13 New York; Howard Stern; E! Channel; MTV Radio; KROCK; Variety Magazine; 411 Magazine; the National Enquirer; the Los Angeles Times; and the New York Post (owned by a Fox affiliated corporation) among numerous others.

22.   During June 1999 to late 2000, famous movie, television, and animation studios such as HBO, Urban Box Office, and Gifted Men entered into negotiations with Ms. Silberstein regarding potential business with her Sqrat character.

23.   During June 1999 to 2000, Ms. Silberstein created a pilot episode script with writer Norah Pierson, and in collaboration with renowned director Mike Simon. Ms. Silberstein negotiated with Mr. Simon for a television series called "Sqrat," which starred the Sqrat character, and used the Sqrat name. Ms. Silberstein pitched this script in New York, California, and to decision makers in the entertainment industry across the United States.

24.   In February 2000, Ms. Silberstein continued to market and promote the Sqrat character and mark within this judicial district in Los

6

COMPLAINT

EXHIBIT D                                   13

Angeles, California, by pitching her Sqrat concept and mark, and distributing Sqrat press kits at industry agencies and studios, including but not limited to: Universal; United Talent Agency; Disney; and an actor-director on the studio set of "Malcom and Eddie." During this time, Ms. Silberstein stayed at the home of Michael Madnick, a personal friend and then-executive of Saban Entertainment and Fox Family for the purpose of pitching, marketing, and promoting Sqrat during the week while in Los Angeles. Mr. Madnick expressed interest in her Sqrat character and mark, and stated that he would forward her Sqrat press kit to his superiors at Saban Entertainment and Fox Family. Michael Anderson, who worked with Mr. Madnick, ultimately did forward the Sqrat press kit and information to an executive at Saban Entertainment and Fox Family for consideration.

25.     While in Los Angeles in February 2000, she secured a commitment from a famous celebrity Tommy Lee to be the voice of her Sqrat character in the pilot for the animated series. She also marketed her Sqrat character and mark at a toy industry convention to toy creators, manufacturers and distributors.

26.     Between January and February 2001, Ms. Silberstein's associate and promotional model for the Sqrat campaign, pitched the Sqrat character to Tony Sella and Allen Yolla, then-executives of Defendant 20th Century Fox, in charge of advertising and marketing on the *Ice Age* film.

27.     During 2000 – 2002, Ms. Silberstein continued to promote and market her Sqrat for an animated series, and/or merchandised goods, by contacting and forwarding her Sqrat pitch and press kits to companies such as Nickelodeon, Visionary, MTV, Spencer Gifts, Flinch Studios, ICM, Endeavor, John Doe Toys, the William Morris Agency, and various animators and cartoonists.

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

1112584v1

COMPLAINT

7

28.     Further, Ms. Silberstein sold, traded and/or transported goods and services through traditional channels in multiple states bearing the Sqrat name and trademark in order to identify their source in commerce. During June 1999 to the present, Ms. Silberstein branded merchandise, including t-shirts, baseball hats, and other goods, labeled with the Sqrat name, likeness, and trademark, and sold and marketed these goods on the internet on multiple websites containing the Sqrat name and mark.

29.     Additionally, during May 1999 to 2006, Ms. Silberstein continued to build, strengthen, and expose her Sqrat concept and mark to consumers in other creative means such as marketing and promoting Sqrat at fashion shows and nightclub events in New York, and on stage at KROCK concerts in New York. She further marketed Sqrat in Valpak in 2006.

### Plaintiff's Registered Trademark: "SQRAT"

30.     In November 2001, Silberstein applied for federal trademark protection for the Sqrat mark.

31.     Ultimately, Ms. Silberstein obtained registration for the following goods and services for the Sqrat marks:

a.     International Class 9 for "Motion picture films featuring animation, pre-recorded phonographs, motion picture films featuring animation, pre-recorded video tapes, video cassettes, video discs, DVDs featuring animation; pre-recorded phonographs, audio tapes, audio cassettes, audio compact discs featuring music; computer game cassettes, cartridges and CD- ROMS; prerecorded computer and video software featuring animation films; mouse pads";

b.     International Class 16 for "Children's books, picture books, coloring books, puzzle books, poster books, fiction books; greeting cards;

///

THORSNES BARTOLOTTA McGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

8

notepads, stationary; stickers, temporary tattoos, trading cards; posters; wrapping paper, and calendars";

       c.    International Class 24 for "Textile wall hangings"; and

       d.    International Class 28 for "Hand held computer games; party favors; manipulative and jigsaw puzzles."

32.    During the pendency of the federal trademark application process, Ms. Silberstein used the Sqrat marks continuously and extensively in connection with and to identify the source of her goods and services in interstate commerce.

33.    Defendants intensely and vehemently opposed Ms. Silberstein's trademark application. (See United States Patent and trademark office Opposition Nos. 91156138 and 3913147.) The oppositions to Ms. Silberstein's Sqrat trademarks applications were dismissed with prejudice in July 2009.

34.    On June 12, 2012, Ms. Silberstein was awarded federal registration number 4159256 for the SQRAT® mark for International Classes 9, 16, 24 and 28.

35.    Thereafter, in 2013, Ms. Silberstein granted a sole license to use the Sqrat trademarks to Plaintiff Silberstein & Silberstein, LLC. Ms. Silberstein and/or Silberstein & Silberstein LLC have engaged in interstate commerce continuously, exclusively, and extensively in connection with and to identify the source of Sqrat merchandise since at least July of 1999.

## Defendants' Infringement of the Sqrat Marks

36.    In or around March 15, 2002, during the pendency of Ms. Silberstein's trademark registration applications, and subsequent to Ms. Silberstein's use of the Sqrat mark, Defendants produced, advertised, and

///

///

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

9

1112584v1    COMPLAINT

1  distributed the highly anticipated and internationally released film *Ice Age*,

2  starring a confusingly similar half-squirrel, half-rat animated character with

3  the confusingly similar name "Scrat."

4      37.     This similarity was no coincidence.  Ms. Silberstein, personally, as

5  well as through legal counsel and various other representatives on Ms.

6  Silberstein's behalf, had pitched the Sqrat character to Defendants' employees

7  in the hopes of arriving at a licensing or purchasing agreement of the Sqrat

8  mark, long before the film *Ice Age* was released.

9      38.     When Ms. Silberstein developed and began marketing Sqrat in

10  May 1999, she was dating Michael Anderson, whom at the time was an

11  employee of Saban Entertainment and Fox Family.  During that time Ms.

12  Silberstein pitched "Sqrat" to Mr. Anderson, whom told Ms. Silberstein that he

13  forwarded her press-kit information about Sqrat to Elie Deckel and Michael

14  Madnick of Saban Entertainment and Fox Family. Ms. Silberstein then pitched

15  Sqrat to Mr. Madnick, who seemed very interested and advised Ms.

16  Silberstein that he would pitch her Sqrat creation to executives at Defendants.

17      39.     During January to February 2001, Ms. Silberstein's business

18  associate and promotional model for the Sqrat campaign, pitched the Sqrat

19  character and concept to Tony Sella and Allen Yolla, then-executives of

20  Defendant 20th Century Fox, in charge of advertising and marketing on the

21  *Ice Age* film.

22      40.     Moreover, in February 2001, Ms. Silberstein and her business

23  associate also pitched the Sqrat character and concept to Shuki Levy, co-owner

24  of Saban Entertainment and Fox Family.

25      41.     On information and belief, Saban Entertainment and Fox Family

26  were involved in the *Ice Age* project with Defendants on or before the time Mr.

27  Anderson, Mr. Madnick, Mr. Deckel, Mr. Levy, and/or other representatives

28

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11th FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

10

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL (619) 236-9363
FAX (619) 236-9653

of Saban Entertainment and Fox Family became aware of Ms. Silberstein's Sqrat.

42.   On information and belief, Mr. Anderson, Mr. Madnick, Mr. Deckel, Mr. Levy and/or other representatives, employees, or agents of Saban Entertainment and/or Fox Family, communicated the idea of a half-squirrel half-rat character named Sqrat to Defendants that was based on Ms. Silberstein's Sqrat character.

43.   On information and belief, Mr. Anderson, Mr. Madnick, Mr. Deckel, and/or other representatives, employees, or agents of Saban Entertainment and/or Fox Family, communicated or forwarded information regarding Ms. Silberstein's Sqrat character and mark, to Defendants before the *Ice Age* movie was released.

44.   On information and belief, Mr. Sellas and Mr. Yolla of Defendant 20th Century Fox, or other representatives, employees, or agents on their behalf communicated the idea of a half-squirrel half-rat character named Sqrat to Defendants that was based on Ms. Silberstein's Sqrat character.

45.   On information and belief, Mr. Sellas and Mr. Yolla of Defendant 20th Century Fox, and/or other representatives, employees, or agents on their behalf communicated or forwarded information regarding Ms. Silberstein's Sqrat character and mark, to Defendants before the *Ice Age* movie was released.

46.   On information and belief, instead of negotiating a licensing or purchasing agreement with Ms. Silberstein, Defendants stole the Sqrat concept, marginally changed the likeness of the animated character from a portly squirrel-rat to a skinny rat-squirrel, and named it "Sqrat." This character did not exist in the original script or animation in the *Ice Age* movie. After Ms. Silberstein had created, branded, advertised, and  marketed Sqrat, and after

11

1112584v1      COMPLAINT

she and her associate and promotional model pitched it to representatives of Saban Entertainment, Fox Family, and 20th Century Fox, the "Sqrat" character a was added to the *Ice Age* movie in the eleventh hour film production after most animation had been completed.

47.    Tellingly, after Ms. Silberstein's attorney confronted the Defendants about the theft of the Sqrat character, Defendants changed the name of their squirrel-rat character from "Sqrat" to the nonsensically-spelled "Scrat" in a bare-faced attempt to end-run Plaintiff Ms. Silberstein.

48.    Since 2002, Defendants have used the Scrat name in commerce to identify themselves as the source of merchandise based on the animated character appearing in their motion pictures. Defendants also use the Scrat name in commerce to identify the source and relationship of the merchandising of their movies and television programs based on the movie *Ice Age*, and its sequels including: *Ice Age: The Meltdown*; *Ice Age: Dawn of the Dinosaurs*; *Ice Age A Mammoth Christmas*; and the recently released *Ice Age: Continental Drift* [1] as well as several related short films such as *Ice Age: Scrat's Continental Crack Up*, all of which star an animated character named "Scrat." Moreover, several zoos in the United States feature a 4-D *Ice Age* films called the "Ice Age 4-D Experience" and related toys and goods are marketed, merchandised, and sold at these zoos.

49.    Scrat is widely known to be one of, if not the most, successful and famous characters of the *Ice Age* Franchise. Vanessa Morrison, President of Fox Animation Studios, was recently quoted in a usatoday.com article stating that "*Ice Age*, at close to $2.5 billion worldwide and counting, is the most

---

[1] On information and belief, *Ice Age: Continental Drift* opened July 13, 2012, and within a week earned $46,600,000.00 nationally, and $95,000,000 million internationally, with an overseas total of $339,000,000; it has earned $500,000,000 as of August 8, 2012.

12

THORSNES BARTOLOTTA MCGUIRE LLP
2550 Fifth Avenue, 11th Floor
San Diego, California 92103
(619) 236-9363
FAX (619) 236-9653

1112584v1        COMPLAINT

THORSNES BARTOLOTTA MCGUIRE LLP
2550 Fifth Avenue, 11th Floor
San Diego, California 92103
(619) 236-9363
FAX (619) 236-9653

successful international animation franchise in history – and Scrat is a big part of its enduring appeal." (A copy of the full article titled "The key to 'Ice Age' success in a nutshell: We love Scrat," published in USA Today is available online at: http://usatoday30.usatoday.com/LIFE/usaedition/2012-07-13-Cover-on-Ice-Age_CV_U.htm.)

50.    The Defendants have engaged in a massive promotional, advertising and merchandising campaign related to the *Ice Age* television shows and films, and the "Scrat" name and character. Since 2002, the Defendants have licensed, merchandised, distributed and sold multiple goods within the same categories of registration as the SQRAT® mark, including posters, books, games, interactive video games, plush toys, action figures, lunch boxes, fast foods, grocery foods, trading cards, backpacks, costumes, clothing items, and promotional toys based on the *Ice Age* films, all bearing the name Scrat.

51.    Though Defendants' Scrat was only given short cameos in the film, the character was an immediate success, and Defendants released a tidal wave of additional sequel films centered on Scrat, including short films starring Scrat, and advertising, marketing and promotion campaigns using the Scrat name.   Defendants' Scrat is now an incredibly famous character with its own Internet Movie Database webpage listing more than twelve films, television productions and two video games that the Scrat character has appeared in.

52.    Defendants continue to use the Scrat name in this way today, and, due to their  highly successful films, international advertising and marketing campaign, and merchandising partnerships with Burger King, Toys R' Us, Ralph's  Supermarket,  Dannon  Yogurt,  Build-a-Bear,  Harper  Collins, McDonalds,  Post,  Nestle, Walmart, Langer's  Juice, and Kellogg's amongst many others,  it is irrefutable that consumers, when faced with Plaintiffs'

13

1112584v1    COMPLAINT

1    trademarked SQRAT®, will believe Plaintiffs to be the infringer of the

2    Defendants' Scrat, instead of the aggrieved party.

3        53.    Accordingly, Defendants have infringed upon Plaintiffs' SQRAT®

4    marks by using the near-identical Scrat name, and by permitting its

5    subsidiaries, agents, distributors, vendors, and/or third-party companies, to

6    infringe upon Plaintffs' SQRAT® marks, by using the Scrat name in films,

7    movies, television, and merchandised goods.

8        54.    Upon information and belief, the Defendants did not engage in

9    commerce of Scrat related items until after the release of the *Ice Age* motion

10   picture. By then, Ms. Silberstein had long used the Sqrat mark in commerce to

11   identify as the source of the Sqrat character, mark and goods. Defendants

12   made no prior use of the Scrat mark, and they had not, nor have they ever,

13   been awarded federal trademark registration protection for the Scrat mark.

14   Defendants made no use of the Scrat name prior to Plaintiffs' use of the Sqrat

15   mark.

16       55.    In a further attempt to legitimize their Scrat and block Ms.

17   Silberstein's federal trademark applications, Defendants engaged counsel to

18   initiate trademark opposition proceedings with the Trademark Trial and

19   Appeal Board (the "TTAB"). Defendants even went so far as to accuse Ms.

20   Silberstein of trademark fraud. After a lengthy battle before the TTAB, Ms.

21   Silberstein was vindicated and Defendants' oppositions were dismissed with

22   prejudice.

23       56.    Despite Defendants' greatest efforts and all out legal attack, the

24   TTAB was not deterred and granted registration of the SQRAT® mark. Still

25   Defendants continue to use a near identical and confusingly similar variation

26   of Ms. Silberstein's SQRAT® trademark on the same and related goods and

27   services.

28

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

14

## Irreparable Harm Suffered By Plaintiffs

57.     The goods and services with which Defendants use the Scrat marks are closely related to the goods and services that have been offered by Ms. Silberstein since at least July 1999. However, due to the worldwide media coverage given to and generated by Defendants' use of the name Scrat, together with Defendants' advertising blitz of the name Scrat,  the media and the general public have absolutely come to associate the Scrat name with Defendants rather than Plaintiffs.

58.     Defendants have used, and continue to use, "Scrat" in connection with their efforts to advertise, market and promote their animated character that combines the likeness of a squirrel and a rat throughout the entire world using any and all of the forums similarly available to Plaintiffs to advertise, market and promote their confusingly similar, if not near identical, animated character that combines the likeness of a squirrel and a rat.

59.     Defendants' far-reaching and intense advertising campaign of Scrat, has pervaded the world to such an extent that it has completely sabotaged and overwhelmed Plaintiffs' opportunity to advertise, promote and market SQRAT®, and is likely to cause, and has caused confusion, among consumers and members of the general public as to the source.

60.     As smaller senior players in the marketplace, Plaintiffs are victims of "reverse confusion" through Defendants' unauthorized and broad-based use of a mark that is near identical and confusingly similar to SQRAT®. It is likely that customers and the general public will be given the impression that Defendants, not Plaintiffs, are the source of the goods and services offered under the SQRAT® mark and/or that Plaintiffs are unauthorized users of, and is infringing on Defendants' rights, trademark or otherwise. Such

/ / /

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

15

1112584v1     COMPLAINT

misimpressions have and will continue to damage Plaintiffs' reputation and interfere with Plaintiffs' ability to do business.

61.    The loss of and damage to the goodwill of the SQRAT® mark, the damage to Plaintiffs' reputation and confusion among consumers is likely to continue, and in fact systematically increase, unless Defendants are enjoined from their use of Scrat, a near identical and confusingly similar variation of SQRAT®.

## FIRST CAUSE OF ACTION

(Violation of 15 U.S.C. § 1114 – Infringement of a Federal Registered Trademark)

62.    Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein, except where inconsistent with the allegations in this cause of action.

63.    The actions of Defendants described above and specifically, without limitations, their unauthorized use of the SQRAT® trademark, and confusingly similar variations thereof, in commerce to advertise, promote, market, and sell the animated film *Ice Age*, its sequel films and related television shows, and related goods, services and merchandise throughout the United States including California, constitute trademark infringement in violation of 15 U.S.C. § 1114.

64.    The Defendants have used the confusingly similar Scrat name, and their far greater market presence, to saturate the market and overwhelm Plaintiffs' SQRAT® trademark.

65.    Defendants swamped the reputation of both Plaintiffs and the SQRAT® trademark with their promotion and advertising.

///

///

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

16

1112584v1    COMPLAINT

66.   Defendants' actions constitute reverse confusion as to the source of the origin of such products, goods and services. The public is likely to be confused by the Defendants' use of the Scrat name, in that:

(i)     Plaintiffs' Sqrat merchandise is associated with the Defendants, the *Ice Age* films, or the Scrat character;

(ii)    that Plaintiffs' Sqrat mark is associated with the Defendants' Scrat name;

(iii)   that the more well-known Defendants are the source of, or are sponsoring or backing Plaintiffs' mark or goods; and

(iv)    that Plaintiffs are infringing upon the Defendants' Scrat mark.

67.   Defendants' actions, if not enjoined, will continue. As a result, Plaintiffs have suffered, and continue to suffer, in an amount to be proven at trial, the loss of value and goodwill, reputation, profits, and strength of its SQRAT® trademark, and the ability to move into new markets, among further injury to Plaintiffs' business. These injuries are ongoing and are irreparable, and an award of monetary damages alone cannot fully compensate Plaintiffs for their injuries. Plaintiffs are therefore left without adequate remedy at law, and are entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

68.   Plaintiffs are entitled to remedies under 15 U.S.C. § 1117, including, but not limited to disgorgement of profits, costs, and compensatory damages (including reverse confusion damages and corrective advertising damages), at an amount to be later proven at trial.

69.   Further, Plaintiffs are informed and believe, and based thereon allege, that Defendants' acts of infringement were undertaken willfully, and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Plaintiffs to recover additional treble damages and reasonable attorneys' fees under 15 U.S.C. § 1117.

THORSNES BARTOLOTTA McGUIRE LLP
2550 FIFTH AVENUE, 11th FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

17

COMPLAINT

1112584v1

## SECOND CAUSE OF ACTION

(Contributory Trademark Infringement in Violation of 15 U.S.C. § 1114)

70.     Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein, except where inconsistent with the allegations in this cause of action.

71.     Defendants actions described above, and specifically, without limitations, their knowledge, participation, and inducement of its subsidiaries, agents, distributors, vendors, and/or other third-party companies, to use the mark Scrat, a near identical, and confusingly similar variation of Plaintiffs' mark SQRAT®, in commerce to advertise, market, and sell goods and services throughout the United States, including the State of California, constitute contributory trademark infringement 15 U.S.C. § 1114.

72.     The Defendants have contributed to and/or induced its subsidiaries, agents, distributors, vendors, and/or third-party companies to use the mark Scrat, a near identical, and confusingly similar variation of Plaintiffs' mark SQRAT®, whom with their far greater market presence, have saturated the market and overwhelmed Plaintiffs' SQRAT® trademark and service mark.

73.     Defendants contributed to and/or induced its subsidiaries, agents, distributors, vendors, and/or other third-party companies to saturate and overwhelm the reputation of both Plaintiffs and the SQRAT® trademark with their promotion and advertising of Scrat.

74.     Defendants' contributed to and/or induced its subsidiaries, agents, distributors, vendors, and/or third-party companies to use the mark Scrat in a way that constitutes reverse confusion as to the source of the origin of such products, goods and services. The public is likely to be confused by the

/ / /

THORSNES BARTOLOTTA McGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

18

Defendants' subsidiaries, agents, distributors, vendors, and/or third-party companies' use of the Scrat name, in that:

    (i)   Plaintiffs' Sqrat merchandise is associated with their goods and services, the *Ice Age* films, or the Scrat character;

    (ii)   that Plaintiffs' Sqrat mark is associated with the Scrat name;

    (iii)   that the more well-known Defendants, its subsidiaries, agents, distributors, vendors, and/or other third-party vendors are the source of, or are sponsoring or backing Plaintiffs' mark or goods; and

    (iv)   that Plaintiffs are infringing upon the Scrat mark.

75.   Defendants' actions, if not enjoined, will continue. As a result, Plaintiffs have suffered, and continue to suffer, in an amount to be proven at trial, the loss of value and goodwill, reputation, profits, and strength of its SQRAT® trademark, and the ability to move into new markets, among further injury to Plaintiffs' business. These injuries are ongoing and are irreparable, and an award of monetary damages alone cannot fully compensate Plaintiffs for their injuries. Plaintiffs are therefore left without adequate remedy at law, and are entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

76.   Plaintiffs are entitled to remedies under 15 U.S.C. § 1117, including, but not limited to disgorgement of profits, costs, and compensatory damages (including reverse confusion damages and corrective advertising damages), at an amount to be later proven at trial.

77.   Further, Plaintiffs are informed and believe, and based thereon allege, that Defendants' acts of infringement were undertaken willfully, and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Plaintiffs to recover additional treble damages and reasonable attorneys' fees under 15 U.S.C. § 1117.

19

COMPLAINT

## THIRD CAUSE OF ACTION

(Vicarious Trademark Infringement in Violation of 15 U.S.C. § 1114)

78.     Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein, except where inconsistent with the allegations in this cause of action.

79.     On information and belief, Defendants, are actual or apparent partners of third party entities, with authority to bind one another in transactions regarding infringing Scrat related goods and services, and/or exercise joint ownership or control with such entities over products and goods containing the infringing Scrat name.

80.     Defendants actions described in this Complaint, and specifically, without limitations, Defendants' knowledge of infringement by such entities described in the preceding paragraph, and failure to prevent such entities from using the mark Scrat, a near identical, and confusingly similar variation of Plaintiffs' mark SQRAT®, in commerce to advertise, market, and sell goods and services throughout the United States, including the State of California, constitutes vicarious trademark infringement in violation of 15 U.S.C. § 1114.

81.     Defendants knew or should have known, approved, acquiesced, and failed to prevent their apparent or actual partners from using the mark Scrat in a way that constitutes reverse confusion as to the source of the origin of such products, goods and services. The public is likely to be confused by the Defendants' subsidiaries, agents, distributors, vendors, and/or third-party companies' use of the Scrat name, in that:

(i)     Plaintiffs' Sqrat merchandise is associated with their goods and services, the *Ice Age* films, or the Scrat character;

(ii)     that Plaintiffs' Sqrat mark is associated with the Scrat name;

///

20

1112584v1

COMPLAINT

THORSNES BARTOLOTTA McGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

(iii)   that the more well-known Defendants, or their actual or apparent agents are the source of, or are sponsoring or backing Plaintiffs' mark or goods; and

(iv)   that Plaintiffs are infringing upon the Scrat mark.

82.   Defendants' actions, if not enjoined, will continue. As a result, Plaintiffs have suffered, and continue to suffer, in an amount to be proven at trial, the loss of value and goodwill, reputation, profits, and strength of its SQRAT® trademark, and the ability to move into new markets, among further injury to Plaintiffs' business. These injuries are ongoing and are irreparable, and an award of monetary damages alone cannot fully compensate Plaintiffs for their injuries. Plaintiffs are therefore left without adequate remedy at law, and are entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

83.   Plaintiffs are entitled to remedies under 15 U.S.C. § 1117, including, but not limited to disgorgement of profits, costs, and compensatory damages (including reverse confusion damages and corrective advertising damages), at an amount to be later proven at trial.

84.   Further, Plaintiffs are informed and believe, and based thereon allege, that Defendants' acts of infringement were undertaken willfully, and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Plaintiffs to recover additional treble damages and reasonable attorneys' fees under 15 U.S.C. § 1117.

## FOURTH CAUSE OF ACTION

(Unfair Competition under Cal. Bus. & Prof. Code, §§ 17200, *et seq.*)

85.   Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein, except where inconsistent with the allegations in this cause of action.

/ / /

THORSNES BARTOLOTTA McGUIRE LLP
2550 Fifth Avenue, 11th Floor
San Diego, California 92103
FAX (619) 236-9653
(619) 236-9653

21

COMPLAINT

86.   Plaintiffs are the exclusive owner of the SQRAT® trademark which is associated with Plaintiffs due to extensive marketing efforts, sales efforts and pervasive use thereof.   As such, Plaintiffs have developed a valuable mark and asset in the SQRAT® trademark, and its character products sold under the SQRAT® trademark.  Plaintiffs are entitled by law to conduct their business related to SQRAT® without unfair, improper, unauthorized, and illegal interference by Defendants as alleged herein.

87.   California's Unfair Competition Law ("UCL") "borrows" violations from other California and Federal statutory laws and treats them as "unlawful" business practices that the UCL statute makes independently actionable. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180; see *Podolosky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647 ["Virtually any state, federal or local law can serve as the predicate for an action under Business and Professions Code section 17200."].) As illustrated above, Defendants conduct of infringing upon Plaintiffs' SQRAT® trademark, whether directly, contributorily, or vicariously, is unlawful and a violation of the federal Lanham Act (see 15 U.S.C. § 1114). Accordingly, the UCL statute "borrows" Defendants' trademark infringing conduct in violation of the Lanham Act (15 U.S.C. § 1114), as predicate for a claim for "unlawful" business practices under section 17200.

88.   Defendants engaged in "unfair" business practices in violation of the UCL, Business and Professions Code, §§ 17200, *et seq.*, by intentionally misusing a near-identical variation of the registered SQRAT® trademark to sell its motion pictures, goods and services, for the purpose of confusing consumers, and to undercut Plaintiffs' legitimate business involving its registered SQRAT® trademark and service marks. Defendants have used the near-identical and confusingly similar Scrat name, and their far greater

THORSNES BARTOLOTTA MCGUIRE LLP
2350 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

22

1112584v1   COMPLAINT

market presence-to saturate-the-market and overwhelm Plaintiffs' SQRAT®
trademark. Such conduct significantly threatens and harms competition, and
offends the policy and spirit of unfair competition laws.

89.  Consumers are likely to be misled and deceived by Defendants'
use of the Scrat name.  In particular, the public is likely to assume that:

(i)    Plaintiffs' Sqrat merchandise is associated with the Defendants,
the *Ice Age* films or the Scrat character;

(ii)   that Plaintiffs' Sqrat mark and business is associated with the
Defendants' Scrat name;

(iii)  that the more well-known Defendants, its subsidiaries, agents,
distributors, vendors, and/or other third-party vendors are the
source of, or are sponsoring or backing Plaintiffs' mark or goods;
and

(iv)   that Plaintiffs are infringing upon the Defendants' Scrat mark.

90.  Defendants knew or should have known that their use of the Scrat
mark was misleading.

91.  Defendants misappropriated and exploited Plaintiffs' commercial
advantage, developed by their labor, skill, expenditures, and goodwill.

92.  Such deceptive business practices impermissibly create a windfall
for Defendants by marketing and promoting to consumers, a character that
they would not have otherwise used in their *Ice Age* movies had they not
stolen it from Plaintiffs, to sell movies, goods, and services.

93.  On information and belief, Defendants intentionally and
knowingly performed the aforementioned acts to compete unfairly with
Plaintiffs, and did so in willful disregard of Plaintiffs' rights.

94.  Defendants' conduct has directly and proximately caused
Plaintiffs to lose money, profits, benefits, and investment of time, and energy.

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

23

Accordingly, Plaintiffs are entitled to restitution by way of Defendants' disgorged profits from the sale of infringing animated films, motion pictures, television shows, products, goods and services.

95.   As a result, Plaintiffs have suffered and will continue to suffer irreparable injury, unless Defendants are enjoined from unfairly competing. Defendants' unfair conduct will continue, and unless enjoined, will cause irreparable damage to Plaintiffs in that they will have no adequate remedy at law. Without an injunction, Plaintiffs will be forced to prosecute a multiplicity of actions, one action each time Defendants commit an act of unfair competition, and for each act, it will be difficult to ascertain the amount of compensation to afford Plaintiffs adequate relief. Plaintiffs are therefore entitled to a preliminary injunction to prevent Defendants' further infringement and unfair competition.

96.   Plaintiffs are informed and believe that Defendants' use of the SQRAT® trademark was intentional and willful, with full knowledge of the unauthorized usage thereof.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that judgment be entered against Defendants, and each of them, jointly and severally, as follows:

1.   For a permanent injunction  enjoining Defendants from using the Scrat name, mark, or any variation of the word Sqrat, including but not limited to any term that includes Sqrat or Scrat and/or any misspelling of the word Sqrat;

2.   For a court order requiring Defendants to file with this Court, and serve upon Plaintiff within 30 days after service of the permanent injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the permanent injunction;

THORSNES BARTOLOTTA McGUIRE LLP
2550 Fifth Avenue, 11th Floor
San Diego, California 92103
(619) 236-9363
FAX (619) 236-9653

24

1112584v1   COMPLAINT

3.    For damages sustained as a result of Defendants' wrongful acts;

4.    For disgorgement of Defendants' profits made as a result of Defendants' wrongful acts;

5.    For an amount sufficient to conduct a corrective advertising campaign to reverse the commercial impression created by Defendants' advertising bearing the Scrat mark;

6.    For punitive damages, according to proof and where applicable;

7.    For recovery of three times Defendants' profits made as a result of Defendants' wrongful acts, or three times Plaintiffs' damages, whichever is greater;

8.    For attorneys' fees incurred in the investigation and prosecution of this suit, where applicable;

9.    For the costs of litigation and investigation associated with this suit;

10.    For pre-judgment interest at the maximum legal rate on all sums awarded;

11.    For such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury on all causes of action which may be so tried.

Dated: September 15, 2015        THORSNES BARTOLOTTA McGUIRE LLP

By: _____

BRETT J. SCHREIBER, ESQ.
Attorney for Plaintiffs
IVY SILBERSTEIN and SILBERSTEIN &
SILBERSTEIN, LLC

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

25

1112584v1    COMPLAINT